Oral argument is 5-17-0-3-1-0. Oh, I'm sorry. Nope. The last case set for today is 5-19-0-3-7-0. In re Paternity of T.A.V. We have designated which counsel is going to argue. Yes, Your Honor. All right. When you are ready. Mr. Hammer. I please the court. My name is Brendan Hammer, appearing with my partner Brian Blitz of Berger Schatz LLP. On behalf of the respondent Napa Lee, Mario Austin Fairway. This is an appeal from a determination of Judge Foley in St. Clair County. With respect to issues associated with parenting time, schooling, and relocation. And the issue presented to Your Honors really is. What determinations are in the best interests of Tinsley Austin? Not a hypothetical child residing in St. Clair County. Nor a hypothetical child residing throughout the state of Illinois. The determination that Your Honors will make here will necessarily be limited to the very unique facts. That were presented over the course of this week long trial. And the error, of course it is always the case. That Judge Foley, like all other trial court judges. Was in the best position to assess the credibility of the multiple witnesses that appeared in front of him. But the error that is found within the ruling here. The 46 page ruling. Is that the trial court assumed. Improperly under the statutory rubric as it now exists in the IADMA. That best interests of the child. And the question of relocation. Are a zero sum game. And they simply are not. In essence the judgment indicates that. With respect to parenting time. One parent's gain is another parent's loss. With respect to place. If a child is in one place. It necessarily excludes the other. And this error. This error in application of law to facts. Is demonstrated. When one takes a granular review. Of the actual factors found. In section 602.7. And 609.2. Where the court in essence. Ticked the box as it were. With respect to. Mr. Austin Fairway. And Ms. Billback. The problem with that analysis. As your honors know. Is that it is divorced from the fundamental issue of best interests. The nexus between. Certain facts. Testimony. Evidence. And their application. Under the particular factors. Was not present. The best interest of the child is the standard. Not the best interest of Mr. Austin Fairway. Or Ms. Billback. Our statute. As it's now been revised. And we can still find it in. Section 602.10. Indicates that the maximum involvement of both parents. Is desired. Parenting that maximizes involvement. And maximizes access. That could only be present. If these parties were. To return to the United States Virgin Islands. A location where. The minor child resided for the first two years of her life. Until she was brought back by her mother. When a lawsuit was initiated in the state of Illinois. A place that she visited approximately 40% of the time. After the 2015 entry. Of the joint parenting agreement. A place where Ms. Billback herself indicated. She would reside. Not just that she would reside. But that she would reside without a court ordering her to go there. A place where she testified that after hearing the educational expert. Dr. Mark Burdick. She was more agreeable to going there. A place that two weeks before trial. She acknowledged at trial. She didn't really have. Any reasons or feelings as to why Tinsley should not go there. If this court. And if a trial court more importantly. Cannot take the word of a litigant. Multiple words of a litigant. On the stand with respect to an issue. Then the court could never make a relocation determination. In fact. Our entire system of jurisprudence. And it's not hyperbole to assert it. Would be in peril. Every contract is in essence a promise. You will sell me X and I will pay you Y. You will perform task Z and I will pay you a certain sum. Contracts are promises. Now. What's the contract here? The promise here, Judge. What promise? I should rephrase it. A child is not a contract. No. A child certainly is not a contract. And the best interests of the child are always paramount. As we both agree in our briefs. The guiding star. The notion, Judge, is that. Ms. Filback asserts. You're assuming a fact, not an evidence. If you say I'll be in the Virgin Islands because I reside in Illinois. The problem with that. And the analogy to the contract, Judge. Although inarticulate and imperfect. Was that trial courts. Need to be able to rely on a parent's word. In a standard relocation case. There's evidence adduced. Dad may have a job in North Carolina. The child may attend this particular school. The parties may reside in this particular home. Does the child actually attend that school presently? Is the child involved in those education extracurricular activities? And does the child reside in that home? Resoundingly in every relocation case now. The analysis of the trial court here. And the argument, if adopted. Would fundamentally imperil the ability. Of a trial court to adjudicate relocation. Particularly where this is not. Why are you saying that? Tell me a distinctive. Point in order that supports your argument. That somehow. The trial court is not going to be able to do this. Because of what the trial court did. Well, okay. So the problem was. In the. In the nine contested factors under section 602.7. Ms. Philbeth. Indicated. That. She would. Return. To the United States Virgin Islands. As had originally. Been planned. Now. Taking that fact. Found on that factor. The wishes of the parents. That it favored her. Under your argument. It could not have possibly been so. If she wanted to move back to the Virgin Islands. Why are we here? Exactly. We are here. Because. And I think it's framed particularly well. To give them credit. By counsel for Ms. Philbeth. In their raising of the Smith case. The court couldn't order Ms. Philbeth. To go back. To the United States Virgin Islands. And the court couldn't suppose. That Ms. Philbeth would go. If Tinsley were ordered to go there. And yet. Judge. It absolutely is the case. That a court should be able to take Ms. Philbeth at her word. When she says. If my daughter is there. I will be there. And if my daughter is there. Didn't she say that. In response to the. The suppositive. The hypothetical. That is. If the court orders. That it's in the best interest of the child. To go back to the Virgin Islands. She says. I will go. She also says it. In. In a number of other places. She said it. And it was particularly. I was an attorney involved. And was responsible for cross-examining Ms. Philbeth. There was an additional question. Relative to. Whether there were circumstances. Where she would go. Even without a court ordering Tinsley. Even without a court ordering. And she. What was the context of that? The context of that. Was to demonstrate. And I guess it was a failure on my part. To the trial court. That Ms. Philbeth. Who had been offered. A home. In the Virgin Islands. And a car. Homes and cars. That actually existed. And weren't just hypothetical. And had expressed no. Concrete objection. To Tinsley attending the Antilles school. Was actually amenable. It was to demonstrate to the court. That necessarily. When. A child within the state of Illinois. Is being asked to have. Permission to go into another jurisdiction. A court ought to look at that. And really ascertain. Whether that is in the best interest. We were attempting to demonstrate. As part of the overall case that we presented. That there should be no concern. That this was in fact. As I styled the judge. A restoration. And not just a relocation. The parties joint parenting agreement. From 2015. Actually sunset. As of 2018. So in other words. The footprints in the sand. In 2015. Were that dad. Always United States Virgin Islands. Mom. Recently Illinois. Okay. At 2018. Would have to reach. A juncture point. Where location. Parenting time. And those other issues. Would be addressed. This wasn't. Like a case. Where. We're coming. Litigants are coming. For the first time. And requesting the right. Of the trial court. To go. To a strange new land. As it were. So it was within that context. Of normalizing. The request. That was being made. In Ms. Philbeck's lap. Of a fundamental objection to it. Which is a salient. Expressly salient. Factor. Under section 609.2. Of the INDMA. With respect to. Remember that section. Yeah. Doesn't your. Client have to have. The majority of parenting. Time to have standing. No. That is. That is what. Excuse me. And I. And I understand the rationale. For that. And it's. It is a function.  Section 609.2. B. Which now indicates. That a parent. With the majority. Or equal parenting time. The construction. Of the revisions. Is that. That. Though. Can only make sense. When. Read the INDMA. As a whole. Otherwise. You would write out the ability. Of every Illinois litigant. Pre-decree. To petition for relocation. If the argument. Is taken to its logical conclusion. Is such. That first. You must pass go. Before you can collect. Two hundred dollars. Then no litigant. In a pre-decree situation. Because they lack. An allocation judgment. Would be able. To request relocation. The only way. To read that. Consistently. Is by reference. To the catch-all features. Contained in both. Section 602.7. And section 609.2. Which is. And again. That's. One way. That one does it. I don't. I think you. You're on. I really did not follow. What you just said. Okay. So let's call it. By its old name. Removal. And. Well let's call it. By its old name. How does the. Non-festive. Party. How can that party. Seek removal. The non. A non-custodial party. In an abstract case. Which wouldn't be applicable. Here because I would argue the parties. JPA. I'm just. Yeah. Using a different terminology. I'm just using the old terminology. Using the old terminology. How can the non-custodial. Parties. Go to court. And seek relocation. By requesting. Parenting time. That would. Provide them ultimately. With at least 50 percent. Of the time. Wouldn't they. First have to have that. Parenting time. Before. They can seek relocation. They would not. Now. The argument I was making. Judge. Perhaps too speedily. And again. Inarticulate. Was that. If that were. The construction. That were rendered. To the statute. Now. It would yield. Particularly. I think. Perverse results. Because. What it would mean. Would be. You would have to have. A signed. Sealed. And delivered. Allocation. Judgment. In hand. That gave you. At least 50 percent. Of the parenting time. Before you could even. Petition. A court. To request. What we used to call. Removal. I don't think. That that's the construction. Generally. That could be applicable. In light of the overall. Statute. But certainly. Not so here. Here. It wasn't even necessary. Because the parties. Agreed. No. That's right. Exactly. So. I was just sort of. I guess. Extemporizing. As to. As to a more general. Applicability. But I think. I think. You're correct. Justice. In that. Here. That isn't the case. Because the parties. Had essentially. Agreed. To disagree. For a period. Of three years. At which point. The matter would be adjudicated. Which it was. So I don't think. That the same. I mean. There was this agreement. That everything was working. Fine. Until the child gets. To school age. Basically. Isn't that what happened here. Now. We've got to decide. Some. Continuity. As opposed to these. I saw. All these. Dates. That were included. In the. Prior agreement. For parenting time. You know. It seems. That the child. Was going back and forth. Back and forth. Back and forth. Yes. But. Now. We have to worry about. The child's education. Correct. So the parties. Had agreed. To figure that out. At a later date. Right. So essentially. The parties. Having always been. In Illinois. In Caribbean family. Essentially said. We will have. That particular arrangement. With respect to parenting time. Your dad will have. Significant chops. With. Tinsley. You know. Down in the Virgin Islands. Where she could. Be with her siblings. Et cetera. And spend. Significant time. School was not an issue. And then. Noting. That at a certain point. School will be an issue. And we will have to come back to court. Because again. We don't have. Tea leaves. And we can't envision. What will be the appropriate. Mechanism. Or. Or. I guess. Set of circumstances. For one. Where she will go to school. Where she will reside. And what the particular complexion. Of the parenting time. You look at. And I think it's precisely. Because of that. Very unique. Parenting agreement. That flowed out of 2015. That the court. In applying. The particular statutory factors. Here. Error. This is not. A sort of one size fits all relocation case. Not that any is.     In that. This is a. This is a. This is a. This is a. This is a. This is a. This is a. This is a. This is a.  This is a. Twin.            Oh. Oh. This is a test. Ok how much. Speak of the devil. Very. Rigorousness. It's very sin. Wow. Now what respect to the other factors. There was. A. To provide. I just have to note. This is important because I think it's quite crucial. The question is what is in Tinsley Austin's best interest. Tinsley Austin has a sister. And Tinsley Austin has a brother. Ms. Philbeck acknowledged that it was important for this child to have a relationship with her siblings. And yet. That factor I think was given short shrift by the court in understanding the entire complexion. This is. The Antilles school is also the school where Tinsley's sister attends school.        To the 30 year old. To the 30 year old. To the 30 year old. To the 30 year old. To the 30 year old.  Where we sit today. In a time and date. Where the parties had agreed to disagree. And three years. And, then, a determination would be made. I think just one last note. Remember. Tinsley Austin lived in the United States Virgin Islands until 2014. When her mother returned here under color of. An illness of sorts. And initiated an action. Now the court then relied on the fact that Mr. Austin for a period of six months. And again. This gets to the point of. We now have a 24 month look back in the statute. I apologize. You'll have some more time. I do want to ask. Or make a statement. Mr. Hammer. It occurred to me. That you cited a rule 23 case. In your brief. And of course. You. Consider that.       1-4-0-1-4-3. 1-4-0-1-4-3. 1-4-0-1-4-3. 1-4-0-1-4-3-4. 1-4-0-1-4-3-4-3-5-6-7. 1-4-0-1-4-1-4-3.  1-4-0-1-4-1-4-3-5-6-7. So I would only say. Absolutely. No, I originally. Ambassador. Certainly understanding. Oh, counts before the timers go back on. I saw in the Supreme Court newsletter today. That there was a case. Last week. It involves the Supreme Court tonight's. Petition to leave to appeal. On a. Case involving. Removal of a. Child. And. And I'm just wondering. Since you. This. You know. So long ago. Is there. Another case out there. That either of you are aware of. That's relevant. To this case. That maybe we should. Look at. Only rule 23 decisions. Judge. Are they? Yes. Was the. I'm not. Mr. Courtney. I. Judge. I would plead. Ignorance. And I would agree. Mr. Hammer tells me. It's rule 23. It's. OK. And. Unfortunately. It doesn't tell me. The name of the case. It just says. It was denied. So. It was just done. Last week. And I was thinking. That if there is something out there. That the Supreme Court. Took a look at. And denied it. That maybe you all. Would want to. Implement the record. Somehow. But if it is a rule. 23. I believe it is. I may be. Speaking. But I'm not aware. If it is not. Please. File a motion. With the court. OK. I don't have. A few moments. Afterwards. Thank you. Just. Please. The court. Counsel. First. I. Justice. Moore. I want. To address. The point you made. And. Using the old language. We used to run. With that situation. Under the old. Removal statute. You would have. Generally a father. Who did not have. Custody. Mom wants to move. Dad would file. A petition. To change custody. Mom would file. A petition. For removal. And what would happen. In those cases. Routinely. Is. The petition. For removal. Was heard. First. If the removal. Was denied. The other petition. Was moved. Most of those times. So. We have experience. With this. This is not. Frankly. It's not unique. To have. A relocation issue. And a custody issue. Simultaneously. I also agree. You're reading. The statute is correct. To seek relocation. One must have. Majority parenting time. Or equal parenting time. That did not exist. In this case. I don't. What about their argument. That you'd never have. The opportunity. Of free. Judgment case. To do this. You would. Because you would have. A hearing. On best interest. First. That would cover. Parenting time. One of those parents. Is going to be awarded. The majority of parenting time. The relocation. Just as in this case. Was pending. Judge Kennedy. Didn't dismiss it. It was pending. It would have been. Taken up. Had father been awarded. The majority of parenting time. I think that's exactly. What would have happened. It didn't happen. Because of. Judge Foley's. Review of the factors. I. You're saying. That the order. Is 46 page. Order. Initially. Determined. Best interest. Awarded. The parenting time. He didn't get. Equal or more. And so. Based on. That. I think. The rest. Of this. I believe. It is. I believe. That is exactly. What happened. And I think. If you look at. His determination. On those factors. I disagree. That's obviously. Why we're here. I disagree. That he gave. Short shrift. To any of the factors. In this case. I think. He spent. An inordinate. Amount of time. Drafting that order. And I think. It's a thorough review. What about. Your client's statements. During the hearing. About. She would move. If she didn't even. Need an order. To move. I. Wanted. To respond. To. Apologize. To counsel. In the court. There was a statement. In the brief. In our brief. That said. She never said that. That's an error. I'm not going to make. An excuse for it. But what I will tell you. Is when one lawyer. Tries a case. And another lawyer. Perhaps writes the brief. Maybe the first lawyer. Should have read the brief. Closer. So that's my fault. But. Having said that. I do think you need. To look at those statements. In context. She was asked. About whether she believed. It was in the child's. Best interest. To resign. In the Virgin Islands. Her response was no. She was asked. If it was in the child's. Best interest. To attend school. In Antilles. She said no. She was asked. Can you. Can you envision. Any circumstances. Under which. You would voluntarily. Move. To the Virgin Islands. And her answer was yes. I think it was a truthful answer. Judge. It was not. There's no context. To it. And I think that's part of the problem. With the record. When I reviewed it. Again. Today. You frankly have to look. At the ten or twelve pages. Prior to that answer. And the four or five pages. After that answer. To give it context. It was an entire series. Of questions. It was. If you had a. In a condo. Would you move. Maybe. Do you have to have a house. No. I don't have to have a house. Well. You want a different condo. Than the one he purchased. That's not the factor. That's basically. What she said. What remains. Unsaid. Is. Temporally. What did that mean. When did that mean. I have no idea. Because it was not. We did not pursue it. From there. Counsel didn't pursue it. On its cross. My redirect. Was directed to. What she did for a living. And how impractical. It was for her. To return. To the Virgin Islands. At this time. With a small child. And that. That is I think. Where we ended up. With that issue. But it is. It was a statement she made. I think the court. Did consider it. I disagree. I disagree. With the. The proposition. Behind this. You hear about. Restoration. And grief. You hear. Even today. We want to restore. The agreement. These parties. There was no agreement. These folks. Were in a relationship. They got engaged. They had a child. The relationship. Ended. That relationship. Ended in January. Of 2014. This little girl. Was born in September. Of 2012. Her involvement. With the Virgin Islands. As a resident. Was about. 15 months. That's about. How long. It was. She has lived in Southern Illinois. For five and a half years. By the time. We tried. This case. That was her home. So there really. As in. Many of my divorce cases. In a lot of paternity cases. There was a change. Life changed. We're no longer together. Judge. As you said earlier. We got to the point. Of school. We had to make a determination. I have been. In this case. From the beginning. That. Parenting plan. Schedule. Was negotiated. And I still think. That schedule. Was in the child's best interest. Just in case. You hit it right on the head. It was a lot of back and forth. But. It was a small child. It was a young child. And there was no real reason. Not to do that. Dad had the ability. To do it. Dad had the financial ability. To do it. And mom encouraged that. The problem is. With all children. You're right. They're not. They're not. They're not objects. They grow up. Sometimes too fast. But they grow up. And when they grow up. We have to make decisions. For them. Regarding school. That's what this boils down to. I. Without going through. The detail. Of the brief. I believe. Judge Foley. Got this right. I think he appropriately. Considered. The child's life. I think he appropriately. Considered. How she has done. During this period of time. In Illinois. And I think the decision. He. He.  Arrived at. Was in the child's best interest. I would. Somewhat reverse. What Mr. Hammer. Said to you. About. Cookie cutters. On one side. Doesn't fit all. I would agree. And if. You start. With the premise. That this child. Has to be in the Virgin Islands. To have maximum involvement. With both parents. Then the reverse. Is true. You will never. Grant a relocation. In any case. In Illinois. And that simply. Is not the law. I think the judge. Looked at the factors. Appropriately. And we would ask you to. Affirm his decision. I have one question. Mr. Foley. I was a bit. Confused. Over. This. Declaratory. Judgment. Argument. It was. Confusing. There was. A count. One which. Judge Kennedy. Dismissed. Was. A count. Seeking. Declare. A declaration. That there had been.   That there would be a review. But it was a temporary. That was. In fact. His argument. Okay. So. I'm. I'm. I'm. Still. A little. Confused. So. Was it. Declaratory. It was. Seeking. Declaratory. Action. For the court. To. Find. That there had been. An agreement. And that. That agree. And that the. Entire. Joint. Parity. Agreement. And final. Order from. Twenty. Fifteen. Were in. Effect. Temporary. Orders. Okay. But the court. Dismissed it. Rather than. Granting it. Took action. Didn't take any action. Did not take any action. On it. Count. Two. Which was a count. Dealing with. Modification. Of parenting time. Remained on file. And it should have. At the end of the day. The schedule expired. There had to be a new schedule. There was no schedule. And. From my view. That's what. Judge Foley did. Is he took this. And applied all of the factors. That he would have applied. To the statute. At two point seven. Because there was no schedule. So the relief. That is being requested. Now it's actually. From your perspective. At least an affirmance. Of the July thirty one. Twenty nineteen. Order. It has nothing to do with the prior dismissals. Or anything like.  No. Your Honor. Okay. Thank you. Thank you. Mr. Hammer. Right. I. Be. Here. Yes. Thank you. I. Ask you the same thing. What relief are you asking? Are you asking for the court to vacate the July thirty one. Order. Are you asking for any other relief. Than that. Our. Our relief is not sensitive to the issue of the declaratory judgment. Simply. Judge Foley's memorandum judgment. And. What's. What's interesting is that. Again.   That. At a certain point. There was no parenting time. And. And. And. And. And. And. And. And. And.      And.     And. And. And. And. And. And. And. And the. And. And. And f. And hydrocephaly. And. And. And. And. And. And. And. And because I think. Everything we can do. To the United States Virgin Islands and her activities in the state of Illinois I think are telling that Ms. Philbeck had no plan for the education of the minor daughter at the point when we went to trial. None. She had no concrete objections to Antilles other than I don't want it. She had no concrete objections to the Virgin Islands other than there's, and I appreciate counsel's of her testimony, other than yes, I may have a home there, I may have a car there, but I don't want to be there for reasons that were never specified. But again, that was truly salient fact. Why? Why do I place so much emphasis on that? Because there's a seven year old girl who can have her mom and her dad within 10 to 15 minutes of each other. There's a seven year old girl who can have her parents within 15 minutes of their school. There's a seven year old girl who for the next 11 years doesn't have to live in international airport terminals and go through customs. There's an 11 year old girl who can go to bed at night and comb her sister's hair. There's an 11 year old girl who can have a full and complete life that has the maximum involvement of her parents with very little downside to either of these parents. A trial court is supposed to look at what is in Tinsley's best interest, proximity to her siblings, proximity to both of her parents, a good school, good education. And by the way, we're not asking for relocation to a place she's never been. We're asking for relocation to a place where she has toys and stuffed animals and has a bed that is a bedroom that is painted, a place where she's cooked meals, a place where she's ridden on boats and swam in pools. I always get the nautical word wrong, Judge. So when counsel says Illinois is her home, that's parochialism. And I'm sorry to say it, but it is. And what we're asking for is parity over parochialism. Inclusion over exclusion and not placing limitations on a life. This order provides constraints rather than contact. What it does is render Mr. Austenberle a 30 percent parent when he was very much an equal parent. What it does is say you can exercise your time within southern Illinois. You can exercise your time in the United States, continental, and you can have summertime when he had been an equal parent. And it relegates Tinsley. I know this is an appellate court, but gosh darn it, there's a reason why the three of you are here. It's to look at what And the word restoration, again, it wasn't just a rhyme picked by some city slicker from up north. It is a return. It is a return for this family to once again, maybe they're apart, but they can still be together. And it's something that Ms. Bilbeck said that she would do. And I encourage Your Honors to look again, as I know that you will, at the 17 factors contained in Section 6 of the Parenting Time Statute and the Removal Statute. Look at the way they fit together and look at the way they allow for the court to consider everything. And at the end of the day, the heart, the touchstone, the key, the thing that all of that's about for practitioners like me and Mr. Courtney and Mr. Blitz and his colleague who do this all day and every day, it's about the best interests. And the question is, what did this record show? Where will Tinsley's best interests be served? Not Mario's, not Christine's. What location is there? And again, the school, the expert testimony indicated. Thank you for your time. I do have one question for you. Thank you. I probably should have asked Mr. Courtney instead, but he commented that his client was not, because of the job that she is currently employed at, made it impractical to move to St. Thomas. My understanding was, correct me if I'm wrong, that's what you had stated. My understanding is that she's a bartender. Is that correct? She works two nights a week as a bartender part-time. Okay. Yes. I was curious about that. Yes. Okay. Any other questions? Thank you. Thank you, ladies. Thank you for your time. Thank you. That will be taken as an advisory. Thank you for coming to Southern Illinois. Thank you for hosting us. You're welcome.